Our next case for today is 2019-206-24 Harbor Healthcare System v. United States. Mr. Searby, you may proceed. Good morning and may it please the court. Edmund Searby for Harbor Healthcare System. We are here today because the government seized my client's legal and compliance materials during a pending investigation without prior judicial approval. Specifically, they seized the entire email accounts for the former general counsel of the corporation as well as the director of compliance. And even after the director of compliance warned the government that he managed the legal function of Harbor and that his office contained many privileged documents, the government still entered the office, carted away boxes of hard copy documents, copied his entire computer, and even took the privileged email, I'm sorry, the privileged memo on the pending government investigation. And it is beyond just... What relief specifically do you seek and what legal authority do you give for that relief? The relief we seek is pursuant to Rule 41G, which is the return of our property. So you seek the immediate return of your property? Well, let me explain it. The point I was going to was that it is a stipulated fact in this case that the government did, took these legal and compliance materials without prior authorization. And we would direct the court to the stipulations of fact in this case, document 17-206-24.144. To answer the court's question, we would seek a remedy at this time that this court order the return of our legal and compliance materials based on the fact that the government lacked prior judicial authorization and they lacked a warrant, particularly describing the seizure of these materials. As for our other issue going to the scope or the execution of a general warrant, the relief we would seek is for this case to be... Sounds like you're arguing illegal surgeon seizure. We are, sir. I see. And that's, of course, unaffordable. That's what basic teachings from Justice Frankfurter and DiBella is that the CIDs and these other processes in Rule 41 is not there to allow civil discovery with an anticipated criminal process. So we're going to litigate search seizures. That looked very much like you're contemplating possible indictment. Is there a grand jury anywhere in the scene here? These processes issued by three different magistrates, three different districts as I recall in the CID. But is there a grand jury out there somewhere? Your Honor, we're not sure because the grand jury's secret. But let me address a couple points in the court's question. What's the illegality? What's the illegality of the CIDs? What's at issue is not the CIDs. What's at issue here is the execution of a search warrant. And the plain language of Rule 41 allows a party that is aggrieved by an unlawful search and seizure to file a motion for return of property. The government has argued that we seek suppression of evidence. We do not. We have no means pre-indictment to even seek suppression. What we simply see— Counsel, excuse me. I'm sorry. Return of property. What do you mean by return of property? Simply that the government would return the privileged legal and compliance materials taken from my client. Under the rule, we would be under an obligation to retain this material. And the government would have the opportunity to get it by another lawful means. But it should concern all of us when the government is taking privileged material by their own admission without prior judicial authorization. That flies in the face of the client privilege and the attorney work product for decades. Yeah, but you have the problem. I mean, I agree. If I were queen for the day, I would treat attorney-client privilege with much greater reverence. But we have the Mohawk Carpenter case, which doesn't. It says, boy, you know, privilege can be decided later. It's not something that's a collateral issue that can be immediately appealed. So while I realize that's a 41-G case, unless it's a little bit of a different context, to me, that's the Supreme Court saying this attorney-client privilege is not at this high level of reverence that I personally, Katharina Haynes, give it. But as Judge Haynes, I have to follow the Supreme Court. Well, Mohawk was dealing with competing concerns, mainly a party's ability to appeal a district court's decision that the privilege should not apply and the possibility for an interlocutory appeal and for piecemeal litigation. We don't have that in this case. When the district court dismissed our case, the case was effectively over. Let me tell you the cases that we believe show the traditional respect afforded the attorney-client privilege by the federal judiciary. And I would tell you for decades, there has been a clear line here that the government does not cross and intrude into the attorney-client privilege and the attorney work product of a party under investigation, unless they make an extraordinary showing to a court that those attorneys were somehow involved in wrongdoing such that the privilege should not apply and such that there's probable cause to believe. But ordinarily, what a district court's going to do with the claims of privileges is not to sit down and try to read all in itself necessarily, but to create, go through the process of creating a law. And that's the traditional way it's done day in, day out and in an almost routine fashion. The district court here created that. Now, there may be some administration of that logging processes, but that's as I understand what happened. But when you would seek return of documents, you mean that the government gets nothing. You take back all your documents, including copies. Your Honor, at this point, what I've suggested should be the remedy is they return. Answer my question. Do you seek return of all documents? Not at this time. We seek return of the legal and compliance documents based on the fact they lack. Please answer my question. Don't try to hedge with counsel. I respect you, but I understand your role as an advocate, but just please answer my question. Do you seek return of all the documents or not? Not all of the documents now, sir. That's my answer to the question. Do you seek only the return of the privileged documents? Yes. The court instituted a privilege process to try to reach a compromise here, where the government passed back to Harbor at Harbor's substantial effort and expense, logging the privileged documents that have been seized in the execution of the search warrants. We determined that there are 3,843 privileged documents out of a 23,000 in Mr. Sprott, the Director of Compliance's email account alone. At this stage, where the case ended, was that the government is claiming their right, notwithstanding this process, the government is claiming the right to then take a taint team or a filter team and still review those materials. To get to the case we really rely on, that a clear application shows the government should not have this automatic right to review privileged attorney-client communications, is Zolan. Remember, Zolan is the case where the to review punitively privileged materials to determine whether the privilege in fact applied. The Supreme Court held that there could be no blanket rule allowing even a judicial officer to review those materials. If an officer of the court does not have the automatic right to review punitively privileged materials, how can the government assert that right for its own attorneys and agents without a showing of the type I've discussed? In addition, sorry, Judge Elrod? Was that the only mechanism that you have is this, the 41G? You don't have any type of other mechanism to get the documents back? Rule 41G really is, I think, the only adequate remedy to get it back. I would commend this court to look again at the foundational case Richie v. Smith, specifically footnote 11, which talks about how a later motion to suppress is not an adequate remedy. The government confuses suppression and return as remedies all through their brief, but footnote 11 really speaks to the Fifth Circuit's understanding of the differences. Suppression invokes the exclusionary rule, and so suppression doesn't return to you your privileged materials. The privacy violation can continue. What suppression does is it prevents the government at a later time, if you are indicted, from offering that material in their case in chief. A motion for return is the only mechanism, to your question, Judge Elrod, that can help someone in our situation who believes that their privileged materials have been taken in violation of the law. And there's frankly no colorable issue here to dispute that the government violated the Fourth Amendment when it seized these materials without prior judicial authorization. And they further, if you look at the stipulation, violated their own internal policies that require special approval in Washington before they do it. And the purpose of those policies is to protect the attorney-client privilege. I agree, counsel, and appreciate the notion because, for example, if you had an arrest in a criminal case, doesn't mean you want somebody to have that document that shows that embarrassing medical event. So I totally understand that. But even if we give you point number one under develop, how do we get to this NSA and how do we deal with the NSA when we don't even know, according to you, if there even is a grand jury investigation? Because I have to admit I'm confused by our precedent on this subject. To me, NSA should begin with an indictment. The Glassman case says that and then says no. So that is hard to follow. Uresti seems to say no to that. But then we have a more recent case sealed something that says the other. So help me with that, with the what's your definition of NSA and where can I find that NSA? Judge Jahanes, I understand your confusion reading what the case law has done on Dabella. The good news here is under the binding precedent of this circuit, we don't get to Dabella. And Richie V. Smith, the Fifth Circuit, said that if the court dismisses a Rule 41 motion for lack of jurisdiction, it's an appealable order and you don't get to Dabella. And in note six of Richie V. Smith, they pointed out what's just basic justice. Otherwise, you foreclose the possibility of review altogether. So and we filed a 28-J on Ryan. Ryan makes the same point. I'd rather talk about... Is declining to exercise equitable jurisdiction the same thing as finding that something's moot or no standing or something like that? Well, I think there's a distinction and there's no doubt that the district court dismissed for lack of jurisdiction. That's the relief the government sought. They filed a motion that said, you know, we don't get to the merits. You should deny equitable jurisdiction. Nothing to see here, Judge. And so there's no doubt that's what happened. And the point is, there's no other action here. The argument that because there's a grand jury proceeding, there's a prosecution and there's a piecemeal litigation here, which is... And do we know whether the grand jury preceded the warrant or post-seeded the warrant? So we don't know the timing. Okay. Can you just help me, though, with the NSA? Let's just assume, arguendo, I get to Dabella because I feel compelled to apply Supreme Court precedent. What do you tell me about NSA, essentially? What I would say is go back to the plain language of Dabella, which made it clear that what the Supreme Court meant was you're talking about whether there's formal charges have been brought. So they talk about whether there's an indictment and information and arrest. So look at that plain language. Think about how absurd the rule would be if a grand jury proceeding could prevent appellate jurisdiction. All the grand jury for 15 minutes to introduce the case, and now they've foreclosed the right to appeal. And how would an appellate, someone aggrieved by an unlawful search and seizure, ever know when their rights to appeal have started to run? Because grand jury proceedings are in secret. So to define prosecution in NSA, other than the plain meaning of that phrase, which is the absurd and an unfair rule. I see my time is up. You're muted, Judge Elrod. You saved time for rebuttal. Thank you. We'll hear from Mr. Gray now. Good morning, your honors, and may it please the court. Harbor Hospice and its employees are the subjects of an ongoing grand jury investigation into potential health care fraud violations. What do you mean potential grand jury? Oh, they're subject to an ongoing grand jury investigation into potential health care fraud violations. I can represent to the court's questions that there is a grand jury investigation proceeding. The details of that proceeding are protected by grand jury secrecy, and I will be prepared to get into the NSA issue. OK, but so you can't tell us which came first, the warrant or the grand jury? I don't know that answer, your honor. OK, so tell me how something could be NSA when the potential defendant doesn't even necessarily know about it. Maybe they now know it's because you said it and said it in the briefing and so on. How can that be an NSA when the defendant is out of the picture, the potential defendant? Your honor, I understand that grand jury proceedings are ex parte. The court in Glassman did address this fairly well. The court stated that the execution of the issuance of the search warrant is merely a step in the criminal proceeding, and then therefore the reasoning behind DiBella applies there. I read Glassman three times last night, and I still didn't get it because it says DiBella is saying it has to be an indictment, blah, blah, blah. Then it has that footnote three that you cite about the Eighth Circuit, and we don't agree. And I'm just reading that and reading that, and I knew Judge Gee and respect him deeply, but I'm lost how you can square that to say DiBella says it's indictment, etc., but we don't agree with the Eighth Circuit that says indictment, etc. How can we square that precedent and follow it properly? Your honor, I think that the court has had the chance in Simons to address that as well and has followed that. I understand there might have been some lack of clarity in the original Glassman decision, but the court stated as much in Uresti as well and said that an indictment was not essential to a finding of non-appealability. We think most fundamentally this case is dismissible under the first prong of DiBella because Harbor is seeking suppression. Harbor is seeking to have these all of its documents returned. I understand Mr. Seary said at this hearing that they're only to me, your honors. In their brief, they've challenged the entirety of the warrant. They've raised the scope issue as something that is an issue here. Why aren't they entitled to get their privileged documents back? Because they were seized without prior authority and you violated the internal processes of the DOJ in they effectively have their documents back. They should have you not to have them. You not to have them. You don't get to have their privileged documents. Even if they're kept in a separate safe, isolated, the government itself, the vast government, does not get to have those documents. Your honor, that is what I understand is occurring with the privilege log process that and not providing access to those documents to the investigative team. It has no interest in keeping privileged documents. If the government has no interest in keeping the privileged documents, then why doesn't the government delete their copies of the privileged documents or return them via some kind of Dropbox method or however you would do a return of a huge number of 13,000 documents electronically? Your honor, I'm not privy to the details of how that exactly working, but I actually understand that that is what the government is attempting to do. It's attempting to return them or is it attempting to just keep them safe in their possession? I understand they're attempting to delete and destroy privilege documents and make sure that cannot be accessed by the investigative team. I would take issue with the notion that there's anything to quote unquote return because of the fact that Harbor has from day one had copies of its emails, had copies of its servers and everything. If I got your electronic medical records in my house, they're on my home computer, would you think that's okay? Well, you know, I, my doctor has the records. I have the records. So I'll let her have the records. I mean, let's assume argumenta, there's something embarrassing in those records. I'm not suggesting there is, but if there is, wouldn't you want those off my computer? Your honor, I understand that concern. And that's precisely why the magistrates here, you know, why the fourth amendment requires a showing of cause. In triplet, this court noted that it in the computer age, it is necessary to seize the entirety of email accounts or the entirety of computer hard drives. And in, in order to determine whether particular documents in particular emails fall within the scope of the search warrant, the court already, and that is turning to the merits a bit, but that is something that is disregard. All of these arguments, your, your honors, we submit our powerful evidence of harbors aim to seek suppression. The harbor says it shows suppression. I mean, that's why I'm using something more to our core, the doctor example, you know, the, the doctor patient privilege, where you just have something embarrassing. It would improve your criminal. It wouldn't prove violated some crime. It's not a matter of, is this going to be introduced in front of the jury, but you are embarrassed or you just don't want people to know about this event. That's why we have that privilege. So people will go to doctors and be honest, et cetera, and get treated. So maybe you don't want the world to know you had COVID. Okay. Nothing to prosecute you on for that. Why isn't that what they're seeking here to just respect their privilege and their privacy, which is a core of the attorney client privilege that it's private. Even if the attorney said, I think you did everything right. You still wouldn't want to turn over that document because it's privileged your honor. I understand the concerns with embarrassing events, which to me read that sound in harbor scope argument, that there are documents that will naturally be outside of the scope warrant on the, on the servers. And the government is entitled to, once they've made a showing a probable cause, determine whether something is relevant to the potential healthcare fraud, which these warrants outlined the warrants were limited with respect. I'm talking about within the privilege world. I'm not just saying, Oh, well, I told my best secret. Now it's out in the world. I'm talking about why the core of privilege is more than just what your lawyer tells you can be used against you. It's what your lawyer tells you is private, confidential privilege. As a lawyer, I would not be allowed to even talk about my client, even though everybody knows that's my client because of the confidentiality it's so core. And so please explain to me how this process where it clearly the investigative people did get some privileged documents in any way respected that and why that is not solely seeking return of documents rather than suppression. Your honor, I would take issue with a few premises. Mr. Siri has said for one, there's no evidence in the record that the investigative team received any privileged documents. There was a filter team. Harbor has had an opportunity to make such a showing and there's no evidence whatsoever that a single document crossed the wall in this record. Um, the government set up a filter team of entirely separate attorneys, um, to, to review these documents and make sure that no privilege documents cross the wall. Um, and Harbor has had every opportunity from the day one to participate in that process. I think within weeks, um, Harbor provided, Harbor was requested to provide and did provide email addresses and names of attorneys who, um, who had represented Harbor in the past. And Harbor at that time could have provided the, the precise privilege documents to the filter team and could have called those documents out. Um, and just at the end, are you still answering judge Haines's question? No, I was simply going to say that, um, at this point though, the investigative team has access to nothing that is privileged. But you seem to think that just because the investigative team doesn't have it, that nothing more is to be done. So I I'm very confused because earlier you said that things were being destroyed. Um, is it the policy and practice that, that, that the team or the filter team or which one of these other teams is going to destroy all of these privilege documents and that the Harbor will keep them in their drive preserved. And then at some point you can tee up your privilege fight, but that you don't get to keep them in a file until that day, Harbor gets to keep them. What? And so I, I, sometimes you've said at one point you were you said, Oh, well, it's just the investigative people don't have them. There's that's two different things. Yeah. I, your, your honor, I, I understand. And I think the answer is truly that the only reason these documents would be retained in any respect is for at some point, the filter team to potentially review them down the line that has not occurred here. And that would be only for a filter team to review them. But that's a very low interest. That's a very low interest. There's no, that's not a legitimate reason to retain documents that were obtained without prior authority, your honor. And I would also take issue with Mr. Series notion that we sought out privilege documents for their own sake. The Mr. Sprott was a, not a lawyer. Harvard did not employ a lawyer. Mr. Sprott was a Harbor's compliance officer. Harvard did not employ a lawyer at the time of the search. Um, and the emails that are, that, um, Harbor discusses are ones that were nested within Harvard's Mr. Sprott's account that the government could not have known about beforehand. So at the time of the search, Harvard was not a law office, did not employ a lawyer at all. It was no different than fundamentally any other business that might have retained outside council. You had, but they had a general council. They did not know that they did some point they did. And they also, their compliance person specifically said they were acting in filtering the advice. And that was known fairly early, your honor. And our position is that a rule that Harbor advances would mean that anytime the well, but now, you know, they are privileged. So it's not like we didn't know at the time, but now that you know that they are, why shouldn't they be destroyed or returned? Your honor, I think the government has no interest at the end of the day. If documents are deemed to be privileged in keeping them at all, and they will be deleted. So, um, Luke, because you're agreeing to do what they've asked for precisely, precisely today, because you're going to delete these documents. Is that what you're saying? I don't want the words in your mouth. I'm confused. No, that's precisely right. Your honor. This case is moot today because the government is intending to delete these documents. Okay. But you know, this intending kind of bothers me because this case has been pending. So if you're intending, then why didn't you do it? Then you could have mooted this oral argument and we would have moved on to the next one. But instead you clearly still have the documents because you keep speaking of the future. And this case has been pending in our court for quite some time. So there's certainly been enough time to go in a computer and go delete, delete, delete, delete. It does not take years to do that. Your honor. I understand. And, um, our position is that the heart for one Harbor has still not completed the privilege review process. So the government has only Harbor. I understand is still reviewing custodian's emails and it has been a year. And that is a source of frustration for our side as well, that we, we do have an interest in expedite expeditiously, um, getting to the bottom of this and ensuring that if the filter team does wish to review documents in the future, they, they might to challenge those designations, but after conferral, they might not. So, um, well, it doesn't sound like the destruction is imminent then it sounds like it's totally in your hands and it's unilateral and it may or may not happen. And so, so I don't know what to do with the idea that says, Oh, we're going to destroy them because, um, it's not, there's no particular day or time that this is going to be done. And you still have a lot of caveats about whether or not you think there might be some right to retain some of the documents. Your honor. And that is a good point that we're, we are hoping that Harbor finishes its privilege review as quickly as possible. And I think the criminal team has been asking for Harbor to finish that privilege review for almost a, for over a year now, almost a year. Have you destroyed the ones that you concede are privileged? They have not been destroyed your honor. I know what I haven't been destroyed is for the potential for a filter future filter team. If, if the criminal team looks at the privilege logs and disagrees for some reason, that's not a legitimate reason, as long as they keep a copy of it and there's a privilege log, then they can have that dispute in the actual lawsuit. Your honor. I, I think that's not, um, I think that's not an issue with it. I mean, we, we acknowledge that the parties can dispute the later privilege applicability of a privilege. Um, I think that's also, let me ask you a question. Um, suppose the, um, the district court template appointed, uh, a, um, a special master, uh, to replace your, uh, team and you continue to put in the privileged documents would be, would be determined in that process. Um, and then you would get the documents that are not privileged. Um, what is it? The logistics of this may be somewhat complicated because you didn't do that. The source of the friction here in no small part is simply the utilization of the, of the government, um, to both prosecute and then also to make an independent termination of privilege by separating the teams. Um, I'm not familiar with that practice, but nonetheless, I, I'm just looking to a simple solution to this. Um, what normally would do, uh, in these situations is to, is to appoint a special master or some other person to make that termination for the narrow thing. Um, the other thing is that, uh, what happens if you turn an indictment? Um, we don't have any information and I don't seek any information from you about that, but if an indictment is returned, then this entire matter simply becomes a motion to suppress. Um, so what's going on here is that you have a grand jury and it's quite plain that you are intending to proceed with that in some fashion. You don't need to comment on that. And what will happen then is that this entire matter will be litigated properly on a motion to suppress. The arguments here are the same arguments that are going to be made to the United States District Court to suppress. And, uh, I think I understand what Justice Frankfurter was dealing with in 1962 and that, that's trying to balance out these interests and so forth. Um, and basically, ultimately the litmus is, is, is that if it's going to be the most subject of emotion, if you, if the person's documents are seized, uh, can litigate those thankfully and a motion to suppress in response to an indictment, then that's where it should go. But then you back away from that time-wise, uh, so that you, in this early stages, it gets, it gets more complicated as whether it's quite clear some of the cases themselves. So my question to you is, is, you suggest that's what the government intends to do. The simple thing is to hand it over, hand them over now to a special master that replace your side of the team with a special master appointed by the court. And they're then in safe hands. And, uh, and then they can delegate the, if necessary, if there's no indictment, then you return the document. If there is an indictment, then you can do it on a motion to suppress. Why wouldn't that work? Your Honor, I think you hit a couple of good points. Um, I think in this case, effectively, um, it's a, I think the question of whether a special master or a future filter team is not yet ripe, of course, but I think it might be the case. What's being suggested to you, the government is a government period and the whole concept is flawed. That's the suggestion that's being made. I'm not commenting on that one way or the other. I'm just saying that's, that's the source of friction. Your Honor, I understand that. And I think we take issue with the notion that that such a role would be required or a special master would be required in every case. Um, Judge Hainan, of course, I wouldn't say that in every case at all, but it depends on, I'm just trying to see a proper way to get this resolved. Um, they, um, one of the, as I read one of the briefs that they are arguing about the, that there were going to be further examination of these, of these privilege documents. And so, is that true? Ongoing? Or are we dealing with a completed act? I think, Your Honor, there, there's, um, that question has not been ripened. There's a chance, that the, um, criminal team could look at the privilege logs from Harbor and say, there's nothing to challenge here. Um, and I think you, in your question earlier, I understand I'm out of time, but want to address your second point from your question, which is that these issues can be addressed. If there is an indictment, these issues can be addressed in the context of a motion to suppress. Even if there is a violation of the privilege, um, as Mohawk and Mohawk versus Carpenter in this court in In re grand jury subpoena from 1999 noted those issues do not give rise to an immediate appeal. Um, they can be dealt with in the criminal case. Harbor could file a motion to disqualify motion to dismiss or motion to suppress for any potential harm. I see I'm out of time. Um, and your honors, I would, we would ask that this court dismiss the appeal pursuant to develop or in the alternative, um, determined that the district court did not use its discretion pursuant to Ritchie. Thank you, counsel. We have your argument, Mr. Siri. Do you have any rebuttal showed yet again is the government cannot defend what they're doing now, and they say whatever they need to say in front of courts, and then they go and they do something else. My friend for the information. And yet, if you look at the final hearing in this case, it is absolutely clear what the issue was. The government was asserting the right to review our privilege log, not simply our log, but the underlying documents without any just cause to do so. And the district court acknowledged our right to come up to the fifth circuit to get a ruling on that issue under And if you look at the record on appeal at 10 35 and August 21st 2019 email that was sent by the government to me and others after the district court dismissed this case right in the middle of this privilege review process, the government made it clear that now that the judge was out of the picture, they were going right back in to inflict the harm we sought to avoid in the lines 20 to 25. You'll also see this. My friend for the government says that there's no harm if we have copies. The Richie case, the Hunsicker case, the fundamental cases of this court made clear that a party that's aggrieved by an unlawful intrusion into privacy gets originals and copies. Why did they say that? Because you can't protect your privacy unless you get the copies back. A motion to suppress again is confused with a motion for a return of property. If we end up in a motion to suppress later and this court has not given us relief, then the government will still be sitting on privileged information they should never have. And as Judge Box, what do you, what do you, what do you ask this court to do? Again, sir, we're asking that the court order the government to return the privileged legal materials from our privilege logs that we'd be allowed to complete this privilege period. And if they don't have a basis to challenge our logs, and the basis should be twofold. They should be able to show that the document, which is specifically identified on our privilege log is within the scope of their probable cause showing in the warrants. So they had a right to, to, uh, to seize it and to that they have a basis to challenge the privilege. It all should come back. But frankly, the fact that they never had antecedent judicial authority to do any of this should entitle this court to do the right thing under the principles of Anglo-American law. And that is to protect our privilege. My friend, do you care whether the order is just, and I'm not foreshadowing, but whether it's destroy or return, do you believe it has to be phrased in return because of 41g? We don't your honor. Um, we would, we would hope to trust the government that is, if it certifies to the destruction of this evidence that in fact did so. And if you look, if you look in the record at our April 2nd letter, one of the concerns we raised with the court was that we, we were doing all this work to log all these privileged communications and the government wasn't responding, whether they challenged our privilege designations, whether they would return those privileged documents or whether they destroyed those privileged documents. Sorry, go ahead. I'm sorry. Do you object to a special master taking the documents from the government? Your honor, I would acknowledge that the special master is preferable to a government taint team for the reasons Judge Boggs talks about in his decision and the recent four circuit decision, which dives deeply into this. But under Zolan, no party should be reviewing our privileged material and they didn't have a right to seize it to begin with. Unless you can make that Zolan showing to have some basis akin to probable cause to establish why those documents may not be privileged. So on those grounds, to be clear, we would object. Okay. I think Judge Higginbotham has a question. No, I wasn't trying. If not my final 20 seconds, let me respond to counsel's statement that the investigative team never got privileged materials. That statement is not accurate. If you look at the April 2nd, 2019 letter, we informed the court that we had gotten a copy of the forensic image of what had been passed from the investigative team to the taint team. And we found privileged material in that in addition twice. Let me ask another question if I might. Are there a set of documents for which there has been a claim of the team of the government team as acknowledged privilege? Do you have something that by which there's no dispute? Assessive documents that are privileged and no one are not. Are you going to say that there's no privilege, that everything's privileged? No, Your Honor. We're not claiming that everything's privileged. But my question is, where are we in this process? Do you have a substantial body of documents that are concededly privileged? Yes, Your Honor. The government has a copy of the privilege log, which has on it 3,834 documents out of a set of 23,000 that were determined to be covered by... I'm sorry, but the privilege log contain simply the documents that you claim a privilege for? Or does the privilege log make reference to list the documents for which the both teams have decided that they are privileged? Has there been any determination of privilege or not? The former, sir. So, what the privilege log shows is Harbor's privilege review, what it identified out of 23,000 documents seized from Mr. Sprott's emails. In addition, there's a log of approximately 75 documents from the former general counsel. And the court's question to my friend from the government was exactly right, which was, they seized documents not only from the director of compliance, they seized documents from the former general counsel. And in addition, the director of compliance is important because he handled the legal function. So, he was the point person with outside counsel. And that's why it was so important that the government not intrude upon his email and his communications without prior authorization and a good reason to do it. So, I see my time is up. I would finally, I would ask the court to reverse this case. And I would remind this court that so much depends on an independent judiciary, which will hold the government to the law. Thank you, counsel. We have your argument. We appreciate the arguments of both parties today of counsel. And the case is submitted. We're going to take a 10-minute recess before we consider the remaining case for the day.